Mark Kendall, Wizard, Kimball, and Roth representing the appointments of Jeffrey Schweitzer, Jonathan Sapp, Paul Ramos, and Donald Fowler on this litigation. The district court essentially said that in a case where a brand new ERISA plan has over half of its assets invested in three funds with just two stops, it's not plausible to say that there is a cause of action for failure to diversify and failure to invest crudely. But the employees had lots of choices, didn't they? The employees had choices, Your Honor. But in the first instance, the fiduciaries of the plan had an obligation to construct a plan that was prudent and to make sure that the investments in the plan were prudent. Here you had a situation where you had, on day one of the plan, $2.9 billion of plan assets immediately came over from what had been a ConocoPhillips plan. ConocoPhillips had been the employer of the 12,000 people who now became Phillips 66 employees, but it wasn't anymore. And that's important because during the time that these folks were employees of ConocoPhillips, that was their employer. They were collecting employer stock that was all within the bounds, if you will, of Congress's purpose of encouraging people to have stock in their employer company. But when they became employees of Phillips 66, none of those rationales had any force anymore. It didn't make any sense for these folks to be in ConocoPhillips stock anymore. It didn't make any sense for the plan to have a ConocoPhillips stock fund. Why? Because, as this court has recognized just last year in the Martone v. Robb decision, as the Supreme Court recognized in Dudenhofer v. Fifth Earth Bank, a single stock fund is not prudently diversified. And having your position is it is per se imprudent to invest in a single stock fund as opposed to this particular one was imprudent for them to invest in. I don't want to go so far as to say per se, Your Honor, and I don't think this court has to. Your brief navigates that line, and I'm not saying you can't, but is there any support in the statute for the former? Or are we really just talking about the latter? I think that what we're really talking about is that it is not diversified per se, and you really need some extraordinary circumstance to make it sensible to have a single stock fund in a plan. Could I imagine circumstances where that would make sense? I'll be honest with you. I have trouble. But you don't have to go there because this is not that case. Right. Well, A1C is clear that it applies to the plan as a whole. So tell me if I'm oversimplifying. It seems like the whole case reduces to the duty of imprudence A1B. And under that, I'm trying to clarify A1B doesn't require always to divest of a single stock plan. Your position is that you allege that it was imprudent in this case to keep holding the Phillips 66. That's correct, Your Honor, although let me go back and say that A1C does apply plan-wide. But here you did have a circumstance where on day one the plan itself, not just the fund, but the plan itself was imprudently undiversified. Because of the heavy concentration. Because of the heavy concentration not only in ConocoPhillips but the fact that it was positively correlated with the employer stock option, Phillips 66. So that between the two of them. That's dictated by the participant's investment decisions. The participant. The relative concentration. The participant investment decisions were made at a time when they were ConocoPhillips employees. True. But if we're talking about time, their brief says you're cherry picking, and it seems undisputed that right at the beginning, if that's the focus, the price actually goes up. Oh, it does. But, Your Honor, I think that it's important to distinguish between what we have to say, what we have to allege in the brief to show a prima facie case that there is injury and ultimately damages here. Well, accepting that, can you articulate for me what the precise breach of duty was? The precise breach of duty, Your Honor, is twofold. One is an A1C breach because the plan itself was undiversified with all of the heavy concentration. Well, I understand the facts. The participants were aware that they had choices to make, right? Participants did have choices. So you're offering a plan, you're administering a plan in which the participants of the plan can make choices as they wish to do so, and it's no longer an ESOP plan. I'm having trouble understanding exactly what the fiduciary here should have done that they didn't do. They made it available, all the choices there. You don't allege that they failed somehow or another to prize the beneficiaries of their choices? No, Your Honor. Your Honor, I believe what the fiduciary should have done in this circumstance is what they did in the Tatum case, although with a better process, and that is to evaluate whether this stock made sense in this plan. Well, you're saying that the fiduciary here had an obligation to inform them that they should diversify. No, Your Honor. I think that they had an obligation after investigation to divest from the fund. They had an obligation to divest. Yes, Your Honor. But in Tatum they get sued because they divested. In Tatum they got sued because they divested, and they won. And they won because after a full trial where evidence was presented on the facts, where experts came and testified, the court said, look, you screwed up the process. You didn't do the process right. But any reasonable fiduciary would have reached the same result. And in fact, the court found that they would have reached the same result for a lot of the same reasons that are true here, which is to say that what the ConocoPhillips stock represented was an uncompensated risk. Risk, and this is important because I think that a lot of the cases that have looked at this have analyzed this case and looked at the Dudenhofer v. Fifth Third case, and they've elided a central problem. Dudenhofer v. Fifth Third said— But it seems to me like your argument is that they should have made this decision for these beneficiaries, period. Following a prudent investigation, yes. And so then what are the choices of the investors? I'm a participant in the plan, and I'm told that I now no longer have that stock. I've been diversified. In other words, you do it unilaterally. Yes. It's the same thing that happened. For example, during the first, I believe, first year of the plan's existence, the fiduciaries decided that one of the existing investment options—it's not that it was imprudent, but that there were better alternatives for the plan. And so they gave an announcement to the employees, and they said, look, we're going to divest out of this plan. Here's the time period in which we're going to do it. And up until then, you can make whatever choices you want. Are you saying that the communication to the participants was inadequate and that they did not understand the risk of diversification of concentration? No, Your Honor. I don't think that we're making a claim with respect to the specific communication at all. So you're left then purely with the fact that they were under fiduciary obligation to, without instruction from the participants, to make a decision for them. Yes, in this instance. You want the benefits of ESOP. When you come out of an ESOP plan, that fiduciary duty disappears, at least the exceptions to concentration goes away. Yes. But that means then that you're freestanding, and you have to unilaterally tell people who are participating in the plan what the balance of your portfolio should be. I think what you're telling them, Your Honor, is— You had your heart set on. I think that's too high a risk, so I did that for you. I might forgive him for that, but I don't really find a justification, if it came out right. But, you know, the reality is that plan fiduciaries in an ERISA plan have to make those decisions all the time, and they do. They make a constant evaluation and monitoring of stock funds, and they say, for example, we've got this fund here, and we can do better. We can do better in terms of risk. Where I'm going with this is I'll have difficulty understanding how we're going to administer the fiduciary rule that you're espousing. Your Honor, I think that the reality is Congress gave a very specific carve-out to a concentration risk when it did the ESOP carve-out. And there was a reason for that, and the reason for that, as the Supreme Court recognized in Budenhofer, is that in the ordinary course, a single-stock investment is not prudent. Now, again, to Judge Higginson's point, I'm not going to say that it's never imprudent, but in the general course, it's not prudently diversified. It's not a good investment for a 401k plan, because the concentration— But the question is whose decision is that? There may be a fiduciary obligation to explain to the participants, and you don't make any challenge to the want of explanation. So it translates purely to the exercise that you say they should have, in a paternalistic way, acted for their benefit. But, Your Honor, what the Supreme Court recognized in the Tibble case is that a fiduciary always has an ongoing obligation to evaluate the prudence of the funds in the plan and to divest out of funds that are no longer prudent. So what Tibble-Langbecker allegations specifically did you make that wasn't one that was this is an overvalued stock? It wasn't one that would implicate Budenhofer? It seems to me what you just said, though, was it's too concentrated. Yes. And this is important. I want to make sure that I get this out, is that when Budenhofer said, look, in the ordinary course, a prudent fiduciary can assume that the market price incorporates the risks that are out there with respect to the stock. It was talking about what you would call idiosyncratic risk. It was talking about the risks that are idiosyncratic to that stock. In other words, in the case of Phillips Petroleum or ConocoPhillips. Yeah, but you're losing time, and my question to you is put aside that type of allegation. All I saw you alleging was that it was a correlated stock that was a single non-employer stock. And that gets you back to, oh, you're interpreting an A1B rule to be a mandatory divestiture rule. In this case, yes, because I don't think that there are any facts that would suggest that there was a rationale for taking the concentration risk here. And yet the stock price went up. That's right. So when in time did it become imprudent? It was imprudent from the beginning. But they made a lot of money at the beginning. You have a lot of explanations. You don't have to react, and the stock goes the other way. But the point of making a fiduciary assessment, Your Honor, and this is what happened in Tatum as well, is to say you can't look at this in hindsight. Now, we have to have allegations on our brief that say— But you are looking at it in hindsight. Not in this sense. But the stock went up then? I'm not making a claim, Your Honor, that the reason why it was imprudent was because the stock went down. Well, you don't have damages if the stock went up. That's true, but that's not what makes it prudent or imprudent. No, that's not the point, though. What you're really saying here is that you should go ahead and make this decision for them. In other words, and then if the stock has gone up, well, that's too bad. Basically, you have made the decision itself as to the risk. Fundamentally, I don't see how you can move that from the participants. You're obligated to explain to them what it is, but I don't know how you can unilaterally make that decision for them. And you say, well, they've got a duty to do it. I don't see where you get that duty. They have a duty to evaluate the prudence of their stocks. Yes, and evaluate. Then what? But, and if the stock is not a prudent investment for the plan, they have an obligation. In their opinion. It is. In their opinion. But then the next jump is they act. You don't simply advise the people and offer an array of choices. Why was an array of choices only offered? I'm sorry, Your Honor. Why was there an array of choices made? I presume it was because of realization of the risk of concentration. But the decision was, do we make that decision or do the participants of the plan make it? But the prudent fiduciary makes it in the first instance. Their job is to put an array of funds that have reasonable risks and rewards here. And the issue to Dudenhofer is that the concentration risk that we're talking about is not the type of risk that they were dealing with in Dudenhofer because it is not the type of risk that can be incorporated into the price of the stock. Dudenhofer actually supports this case because what it says is the price of the stock on day one of this case, to your point, Judge Higginbottom, incorporated the risk that it could go down. It incorporated all of the good things about ConocoPhillips, the reasons why it might go up. There was no reason to believe that that stock would achieve extraordinary returns. But by concentrating all of that stock into one fund and having 35% of the plan invested in that one stock, the riskiness of the investment increased probably fourfold. That was the finding in Tatum. That extra risk is not incorporated in the price of the stock, but it is borne by the plan. Your initial time has expired now, Mr. Kendall. You've saved your full time for rebuttal. Thank you. Sales? May it please the court. Good morning, Your Honor. Travis Sales for Appalachian. This case involves a straightforward application of ERISA precedent and principles. In a well-reasoned opinion, Judge Lake dismissed the lawsuit for failure to state a claim. With regard to the breach of duty of prudence claim, Judge Lake correctly said that they had failed to state a claim because the claim for breach of duty of prudence rested upon the COP stock being too risky, and that was premised on public information, specifically at paragraphs 61 and 69 of the complaint that we've cited in our brief, Your Honor. There's no mistake that the allegation is that the stock is too risky based on public information, public news articles, and market information. But their position isn't that it's just a straight Dudenhoffer problem. Their position is, as he described, it's not idiosyncrasies as to this stock. It is structurally. It is imprudent to have such a concentration in a single stock fund. Your Honor, that's their argument, but it's incorrect because what they've alleged in the reply brief is that the COP stock was a, quote, toxic oyster in a buffet of investments. They've recognized that they have not pled, do not argue, that there was not a range of investments given. Under the Young case in the Second Circuit and under the district court cases we've said, that's the fiduciary's obligation in a defined contribution plan. The mistake that the plaintiffs repeatedly make and argue in the cases that they cite rely on old defined benefit plans where the fiduciaries are actually making the investment decision as to how much – Yeah, put aside those cases. I mean, you're right. The metaphor they gave was that toxic oyster. That's in the reply brief. At the outset, they say too many eggs in one basket. And your answer is, well, the participants choose here. It isn't one where the fiduciaries are allocating. But wouldn't you agree that they would at least have a triable prudence, breach of prudence claim if there were a toxic oyster? No, Your Honor, because the toxic oyster is Dudenhoffer. This is a publicly traded stock. And the Supreme Court made clear that when you have a publicly traded stock as an option in a defined contribution plan, it is implausible to allege that it's a toxic oyster. That's not sufficient. You have to then allege the special circumstances, which they do not do. There's no special circumstances here nor have any been alleged that affect the reliability of that market price. But the simplicity of that argument would mean is your position that it is never – that it would never be imprudent to have a legacy stock as one choice among many in the portfolio? Well, first of all, they have not alleged what they need to for diversification or prudence, so you have to look at the two. Well, I'm just asking you is your position legally that it would never – could never be – it would always be dismissible if a huge concentration of assets were in a legacy stock? Well, first of all, in these spinoff transactions, Your Honor, you're always and largely going to have a large percent at the spinoff. And so there's nothing – no, there's nothing inherently wrong with that. But why doesn't it suggest that you knew it was imprudent if you didn't allow new investments into it? Because, Your Honor, that – it was frozen because it was – the belief is that it was employer stock securities exempt from the duty to diversify at all. And the importance of that is for tax reasons, Your Honor, because, for example, if you had a – some of these employees have been there for 40 years through ConocoPhillips and then Phillips 66. If they've been given stock when it was – the basis point was 20 and it went to 100, if it's employer securities, that $80 appreciation is taxed at capital gains when they pull it out. If the plaintiff was right and they forced divestiture and moved that stock into a different fund, when they pull it out when they're 65, it is now taxed at ordinary income at $100. Okay, so the freezing quality of new investment was purely a tax move. It's a tax move because it's also related to the fact that these are longtime employees in a defined contribution plan, Your Honor. The fiduciary's duty is to make the range of options, but the investment decisions rest with the participants, and they are not going to substitute their decision for that of the participants. For example, a 64-year-old in that plan may have one issue about keeping it in there for the tax purposes. Maybe a 30-year-old wants to move it to some target vanguard fund. True, but I think the hardest case for you then, in my opinion, is the TATEM. If you look at the full sequence of TATEM decisions, by the end, there was expert testimony that was credited with a district court ruling that the investment committee had properly ordered divestment, overruled the choice. Isn't that exactly what they're arguing in Flint? But the problem is there what happened is the fiduciaries, despite it being a defined contribution plan in which the plan participants are supposed to make their directed investments and have the choice to retain or sell that employee or stock, the fiduciaries intervened and forced divestiture. And the participants lost a ton of money, so they sued the fiduciaries. At that point in time, the fiduciaries on the process claim had to justify what they did. But ultimately they're vindicated, and the district court opinions have held in TATEM VI that that was the prudent thing to do. But they had to justify it. Here they did not state a claim in the first instance because the fiduciaries did not intervene in contravention of the defined contribution plan. They left it to the choice of the plan participants. They didn't intervene and do anything to affect it. They left the status quo and let, as the plan is designed to do and the law is designed to do, allow the plan participants to make those informed decisions based upon their individual risk assessments. And I think we've cited this in our brief, Your Honor, but there's a regulation in the IRS regulations that require the plan fiduciaries – this gets to Judge Higginbotham's point – that require the plan fiduciaries in a defined contribution plan to warn the participants. Is that 1025? Yes, Your Honor. And they did that here? Exactly. No dispute they did that. Be careful if you invest more than 20 percent of your holdings in any one security. By clear implication and direct implication, it's the participants' responsibility. They can ignore that warning if they want. If they want to hold more percent in any one investment, they're entitled to do that. But the responsibility of the fiduciaries here was what they did do. They created the plan, they oversaw the plan, and they created a diverse option or menu of options, which is there's no dispute here whatsoever that it was diverse with regard to the options. And so I think that they've completely fulfilled that responsibility. I think Dudenhofer forecloses clearly their prudence claim because this court in Kopp v. Klein last year made perfectly clear that claims of being too risky is the same as claims of being undervalued or overvalued. That goes to the concentration claim that it's too risky to have this, but that's again the public opinion. But you don't deny that a B1 – is it B1A1B claim? The investment committee would still have a constant duty to monitor and investigate, which could be heightened if it's a single stock plan. The Ledbecker-Kopp-Tibble line of authority still applies. It applies, but it doesn't – remember the Tibble case was a statute of limitations accrual case dealing with an excessive fee for mutual funds. And what – in that case, it was not dealing with a publicly traded stock in which there is a deemed to be an efficient market. Tibble does not touch Dudenhofer. It followed Dudenhofer. It doesn't address the issue that was in Dudenhofer that's in our case of the publicly traded stock. Clearly the fiduciaries have an ongoing duty, for example, to make sure that the other non-publicly traded funds, that they don't have non-public information, that there's something awry with those funds, that there's excessive fees, etc. But their job with regard to publicly traded stock is unless there's special circumstances that affect the reliability of the market, they do not have to remove that because they're not deemed to be able to time the market. And again, to several of y'all's questions, that's exactly what we have here is if you look at – we showed the stock market price of a COP stock over time here. And if you logically take what the plaintiffs have alleged here, this was a breach of the duty immediately at spinoff because it was a non-diverse plan or non-diverse stock fund at that point. That would have required a crude fiduciary to immediately divest according to their theory or argument. Well, of course they don't go there because the absurd result there is that stock after spinoff went up considerably. And, in fact, we would have been a tatum situation if they had forced divestiture. And then they would have arguably had to have a trial and to show that they involved a prudent process because they then would have had to justify what they did. But that's not the case here. I would like to briefly address the question, which is a question of first impression of employer security qualification after spinoff. I have great personal respect for Judge Lake. I think his opinion is well-reasoned and right, and the court can affirm without reaching this question. But it is a question of interest if the court wants to address it. The COP stock fund was frozen at transfer into the Phillips 66 plan. We believe if you look at the definition of employer security under ERISA, it talks about when that stock is issued. And we've cited the Maynard case, not because it's an ERISA case, but it's a Fourth Circuit case dealing with the interpretation of the statute of issue. And it's tethered to time. And there's no doubt when the stock was issued, COP stock was issued to these people as COP employees, and it was qualified stock. It was then frozen at the spinoff. And there is no reason for why it would lose that qualification. And indeed, Judge Lake cited an IRS ruling that said, well, we don't think it's any longer employer securities. But first of all, the IRS does not have presidential or legal authority or regulatory authority over ERISA. But more importantly, what the IRS then did is they looked at the tax consequence of that situation. And they said, no, it does not lose its tax preferential status. It remains for tax purposes as employer stock, the 2080 appreciation issue. And we think the only reason it would maintain that status is it's still employer-qualified stock. And we think that, frankly, that the better reason to rule would be if you look at the actual language of the ERISA statute with regard to employer-qualified stock and the tax treatment of it, it should not lose its character once it's spun off if it's frozen and not commingled with new stock that clearly is not employer stock. So, Your Honor, that would be a pretty big gap for us to fill in something that Congress might have overlooked. That would be fairly aggressive for us to say that, it seems to me. Well, I don't think any court has addressed it until Judge Lake addressed it in his opinion. And I don't think – I think that Congress did address it just by the definition of employer stock, Your Honor. I just don't think it's been addressed. And I think the IRS has looked at it by holding that it maintains its preferential tax. But I thought the purpose of the exemption was to encourage them to have ownership in the company. And if we continue the exemption, it wouldn't adhere to that purpose. But it's frozen, Your Honor, so it does. And, actually, I, again, respectfully disagree with Judge Lake on this one point. Actually, causing a divestiture of employer stock – I mean, obviously corporate transactions happen all the time. And if the idea is that you are going to lose that status at spinoff of these plans, then I think that actually discourages the purpose of holding that stock. And so I think, actually, the stock price will take a hit. You have 12,000 people if they were forced to divest, for example. And so I don't think – I think when it's frozen like this, after a long period of holding by these participants, I don't think that that is inconsistent with that issue. But, again, I don't think this Court need necessarily address it because I believe the District Court was on firm ground. The breach of duty of prudence clearly did not meet Dudenhofer. There's no allegation of special circumstances. The process claim, very similar to the Kotb-Klein case this Court held last year, you can't have a stand-alone process claim. You've got to show that there's a viable underlying claim of the breach of duty of prudence or diversification, that the fiduciaries would have done something different than they did. And then the diversification claim, the duty clearly we have – the Second Circuit has already held that the C, diversification requirement, is you look at the plan as a whole, whether it's diverse. We had the Quattrone v. Gannett case just recently that we brought to the Court's attention, the Eastern District of Virginia case. Case brought by the same plaintiff's counsel, same types of claims here, and dismissed both the prudence and diversification claim. So we respectfully ask this Court affirm the District Court's dismissal because it's on sound footing, on the risk of precedent, and very consistent with the case law and the purpose of defined contribution plans. One question. What does the record reflect? How many stocks did the committee say no longer available? Did they actually override any option and choice that they – Well, the options change over time. For example, if they have target funds, they have index funds, they have bond funds, they have stock funds, they'll change the mix every once in a while. For example, if somebody has a better fee structure, but it's not because that they are finding imprudence of a particular investment here, and certainly not with regard to the public stock funds. Thank you, Your Honor. All right. Thank you, Mr. Sayles. Mr. Kendall, you've saved time for rebuttal. Thank you, Your Honor. A couple of quick points. The defendant's position here is that in Tatum it was necessary to get to the facts and to have a full trial because they divested. But here, because there was no divestment, we should cut this off at the outset without any discovery, without any trial, without any facts. So there's essentially a per se rule that if you do a spinoff and you have this employer stock or formerly employer stock that is being put into a new plan, if the fiduciaries sit on their hands and do nothing, which is the worst thing to do in terms of your plan structure, they can't be sued. Or if they are sued, it won't make it past a motion to dismiss. But if they do the prudent thing and they divest, well then they're going to have to be sued and they're going to have to go through trial and they're going to have to go through all the rest of that. That is a perverse result that will end up forcing and certainly incentivizing fiduciaries to do exactly the wrong thing in these circumstances. I have three quick questions that I think are yes-no. Do you agree that the 1025 warning was given? Yes. Okay. And the second one, they rely heavily on the Ohio District Court case, Yates, 2017. Did anything happen to that on appeal? Yates was not appealed. And the last question is do you have any A1B case that does stand for a duty to divest immediately? Well, let me back up because I'm not saying duty to divest immediately. What we're saying is that as soon as the plan became active, the fiduciaries had a duty to investigate, really to investigate all of the options that were being offered to make sure. And I think of that as a Tybil, Lange, and Becker duty. And they don't seem to be denying that. Right. But, you know, when you're doing that, in this case, if you looked at it and you did your investigation, maybe there's something that we don't know about, some private facts that we don't know about, not public facts that are affecting the stock market. Right, but you didn't allege those. That we don't allege that might have encouraged them to say let's keep it. But on the face of it, what you have is a publicly traded stock in an efficient market. You have no reason to believe that it is going to outperform an S&P 500 index fund. And by having a massive concentration of it in your plan, you've dramatically increased the concentration risk that plan participants are bearing. So on the face of it, this doesn't look like a prudent move. You have uncompensated risk. So I think that, you know, our allegation is on the face of it, it looks like what they should have done on investigation was decide to wind this down, which a lot of funds have done. They didn't do that here. And what we're saying is that's plausible enough, given the fact that all investment professionals would recognize that a massive concentration in a single stock fund is not prudent. That's plausible enough to get us to discovery. Just as it was plausible in the Tatum case for them to say, look, you divested and the stock went up. With your last minute 20, do you have a response to that employer issuance issue? Because it would be significant if we accepted that. I'm sorry, the... The notion that this stock maintained its exemption because... Look, that is an interesting fact. And it may be that the defendants would come back in a full, you know, investigation and say, look, this is one of the facts that we considered among the other facts that were relevant here, and we made a decision, and they're able to demonstrate that through a prudent process they considered all of those. Those are factual elements that we would get to in a trial. I'm saying whether Phillips 66 stock maintained the exemption. I think you mean ConocoPhillips stock maintained the tax exemption. Okay. Phillips 66 stock clearly had it. I believe that the tax exemption continued to extend to... No, the exemption for diversification. Oh, no, I'm sorry, no. That's the second issue. No, no. I thought you were talking about the tax exemption. No, the exemption for diversification only goes to employer stock. The district court's decision below was very clear on that and very well reasoned. There is a purpose behind that employer stock exemption. It is not met by having non-employer stock as a single stock fund. If I may, just one last quick point. Your time has expired, Mr. Carmody. Thank you. Excuse me, Mr. Kendall. Your time has expired and your case is under submission. The court will be in brief recess before hearing the final two cases.